Please rise. This court is now in session. 3-14-0-4-7-7. People of the State of Illinois. Appellee by Dawn Duffy v. John McCottrell. Appellant by Chan Woo Yoon. Mr. Yoon. Mr. Clark. University. Thank you, Your Honors. I would request 15 minutes for argument and reserve 5 minutes for rebuttal. Thank you, Your Honors. This morning, I would like to address or focus on issues 1A and 1B from the briefs. And if time permits, I would also like to address issue 2. Oh, I'm sorry. And my name is Chan Yoon, and I represent John McCottrell in this matter. I'm with the Office of the State Appellate Defender. This appeal concerns a summary dismissal of a post-conviction petition. And at this initial stage, a petitioner is not required to prove his claim, but must merely or need only show that his claim has an arguable basis in fact and law. Or in other words, that his claim is not based on an indisputably meritless legal theory or a fanciful factual allegation. McCottrell's claims, when accepted as true, meet that low threshold standard because the record does not rebut his claims, but in fact provides some support for them. So as such, this matter needs to be remanded for second stage proceedings. And moving then specifically to issue 1A, which is McCottrell's claim that trial counsel was arguably ineffective for failing to file a motion to quash arrests and suppress evidence. Here, the available facts show that it is at least arguable that the police did not have probable cause to arrest McCottrell, and that thus a motion to quash arrests and suppress evidence would have been successful. Although there is a video of the incident itself, from that video, that video does not provide a clear view of the offender's face. And unsurprisingly, the police did not rely on that video during their investigation. Instead, Sergeant Wetzel, the officer who initiated the investigation, what he did was he viewed the security video of the incident itself and he compared it to previous footage at CBS. And from that previous footage, he saw that someone was wearing a similar jacket to what the offender was wearing. And Wetzel came to the conclusion that those two people were the same person, and he extracted a still photograph from the previous footage, not the video of the incident itself. And he distributed that photograph to police officers, and police officers, they relied on that photograph to eventually find and arrest McCottrell. So what we have here is that the entire investigation was based off this previous footage instead of the video of the incident itself. So what's wrong with that? So this previous footage is not a part of the record. There's no testimony exactly as to what that previous footage shows. And it does appear that the There's no testimony as to whether that previous footage shows a crime, an offense being committed, whether there could have been probable cause for something else to arrest McCottrell. So that's the problem here. There's just nothing in the record that rebutts this claim that Wetzel should have filed a acknowledges that the complainant testified to viewing previous footage of breaking into the employee lunchroom. But again, there's nothing in the record, there's no testimony in the record that links that video with the video that Wetzel saw. So again, there's nothing here that... Well, wasn't there testimony that the person recognized, you know, the coat and the person in there, and then went to this video from this previous incident like the day before, and said, look, it's the same guy. And then they got a still picture off of that, and they circulated that to the beat cops and the detectives, and they went around that and led your clients around. Sure. So what the testimony says, or what Wetzel testified is, is that he saw this previous footage, and he saw someone wearing a similar jacket. Again, that's the only identifying characteristic. And if your honors view the video, well, I'm sure that when I view the video and your honors will see it for yourselves, is that jacket is a very plain winter coat. If that's the only thing that matches, and there's nothing else that Wetzel says that he relied on to match the offender and whoever is in that previous footage, then that doesn't seem to me to be enough to establish probable cause to make that match in this case. So again, this is a first stage PC, and I think we have to accept his allegations as true at this stage, and to see if the record rebutts his claim. At this point, not knowing what the previous footage shows exactly, I think at this point then there needs to be further investigation. This matter needs to be remanded for second stage proceedings. And I would also like to point out that McCottrell was prejudiced by the fact that McCostle did not file a motion to quash the arrest here. A successful motion would have rendered inadmissible the complainant's lineup for identification of McCottrell. And without that evidence, the other evidence in this case is not very strong. There's nothing that really links him besides that complaint. But what about the victim saying that's the guy that did it? That's pretty good evidence, isn't it? So the complainant does identify McCottrell in court. And if you look at the record, if your honors will look at the record, what her testimony shows is that she didn't really have a good opportunity to identify him from what we see from her testimony. So there is the 911 call. And what she says on that 911 call, in her testimony, is that she identified the offender as a black male. And she also admitted that she could not come up with a description as to hide and wait. She said all she saw really was his face, because he was almost face to face with her. Sure. So she also says that when she looked behind her, the only opportunity for her to view the offender's face is when she looked up, right when the offender came up behind her, and she was hit simultaneously by a hammer. So her opportunity to view this offender was not very good. She could say that she was 100% sure in the court, but in actuality, what the evidence shows, it sort of belies that claim that she could have made this identification. I would also like to note that this was a cross-racial identification, the complainant being white and the offender being black. So a lot of factors here make what she said in court, it really weakens that identification. And then without the line of identification, and considering that the videotape also doesn't provide a real clear view of the offender's face, that match can't be made from the security video itself, and also the fact that there's no physical evidence that links McCutchell to this crime. There was no DNA, there was no fingerprints on the murder that was used, and there's also no inculpatory statement, there's also no other eyewitnesses. There's not evidence that links McCutchell to this offense besides what the complainant testified to. And again, this does go to the reasonable doubt argument that I raised in Issue 1B. So for those reasons, this matter needs to be remanded for second stage proceedings. And if your Honor is still having questions... I have a quick question on your last issue regarding fines and court costs. You've elected to challenge only the DNA fee, the public defender fee, and the $25 crime stopper's fine. But there are amounts in the court costs sheet in the record that are really excessive that you have not challenged, and I'm just of nearly $2,000, $1,986.04, sheriff's fees of $128,195. There's no breakdown of what these various fees are for, nor can I find any statutory authorization for those. Why have you not elected to challenge these large amounts that do not seem to correspond to any statutory fine or fee? Your Honor, when I was looking through this record, those two fees were the ones that I found were the $200 DNA fee and the $100 public defender fee that were clearly improper under statute because the DNA fee is... You're also asking for an offset of a $5 per diem on the crime stopper's fine, but the crime stopper's fine can only be applied as a condition of probation. So when you obviously have not challenged these fines, are you conceding that you have forfeited or waived any challenge to those amounts? I would argue that these fines and fees can be challenged at any time. Since this is a simple ministerial act, the imposing of fines and fees, if I had missed them, I wouldn't say that I waived them. If this matter had been remanded for a second... So you haven't asked us to remand to the trial court, you've just asked us to adjust? Sure. All right. Thank you. Thank you, Your Honors. Good afternoon, Your Honors. Counsel? This first issue, as far as I can tell, kind of juxtaposes an argument of a motion to quash arrest because there was no probable cause to arrest this defendant. But on the other hand, there should have been maybe a motion to suppress the complainant's ID as what unnecessarily suggestive in a violation of due process, although he hasn't made that argument. I'm not quite sure what the problem is. But what I do know is that there was definitely probable cause for his arrest, and there was no reason to file a motion to suppress the identification. The facts in this, very shortly, and I might also add that he argues in his brief that there's a reasonable probability that a motion to quash arrest would have succeeded and rendered the complainant's identification of Mercator inadmissible under the fruit of the poisonous tree doctrine. Well, this has nothing to do with probable cause of his arrest. So, again, I'm not quite sure what the argument should be. On the night of January 25, 2008, approximately 7 p.m., the complaining witness, Donna List, was sitting in the back room of the CVS pharmacy, counting money. She heard someone, saw someone come into that office and looked up directly into the face of a person she later identified as the defendant. And then she was hit on the head several times with a claw hammer. Later that night, Jennifer Cook, the manager of the CVS, and Officer Ellis were in the CVS pharmacy. They reviewed surveillance tapes, more than one. Jennifer Cook saw a person on that tape. Officer Ellis viewed a person on that tape and later testified that that person that he saw on that tape was the photograph that he printed was better in surveillance tape number two than it was in one. Then, on January 26, the next day, patrolman Gerald McKean was given a copy of that photograph. And she knew who this was in this photograph. And she said, yes, well, yeah, I do. He's a registrant here and we have his photo ID on the file. Later that day, Detective Tim Moore received information from an acquaintance of the defendant, one Marcus Rice, that the defendant was at the bus station and was planning on going to Chicago. So he relayed this information to Detective Keith McDaniel, who was working part-time at the CityLink bus station. McDaniel had also previously viewed a photograph of the defendant. It was sent out with a, you know, be on the lookout for this guy. McDaniel then spotted him in the station, asked for his identification and detained him. Then, on January 27, Donna List, the complaining witness, went to the police station to view an in-person lineup and picked out the defendant. All of those things happened before she identified him in open court as the man who robbed her and beat her with the knife. She was 100% sure that the defendant was the man who hit her and robbed her. Now, I don't see any problem here. I'm sorry. Is it me? These two issues, both the probable cause, there is probable cause, based upon the facts in this case and the applicable law. There is therefore no arguable issue either in law or in fact that there was a lack of probable cause to arrest him or that the complainant's identification of the defendant should have been suppressed. There has been no law provided to you that suggests that, and based upon the facts here, the facts don't fit either. Therefore, if there is no arguable basis in law or fact for either one of these arguments, there is no gist of a constitutional claim. Unless you have any questions on any of the other issues. Thank you, Your Honor. Very briefly, Your Honors. I would just like to point out that McConnell doesn't have to prove his claim at this point. He only has to show that he is stating the gist of the claim and accepting his allegations as true. There is one exception to that, accepting something as true is if it is belied by the record. And in this case, the record doesn't belied his claim. The state argued that Wetzel made this identification by viewing both videos. But again, what he says is he identified it through the jacket, only the jacket alone. We don't know at this point whether Wetzel saw any other matching characteristics between this previous footage and the security video itself. What's the difference? Well, Your Honor, if someone is identifying someone just by their jacket, that's going to be, especially if you do view this video yourself, Your Honor will see that this jacket is not something that's very unique. It doesn't have any type of sports logo or anything like that. It's just a very nondescript winter jacket in the middle of January. So my argument would be that Wetzel's testimony about how he made this identification doesn't rebut McCutchell's claim that that alone would have been insufficient to establish probable cause in this case. Also, just very briefly, on the fruit of the poisonous tree argument, the complainant's line of identification was a direct result of the arrest. It happened the day after. So that would be rendered inadmissible if there had been no probable cause to arrest McCutchell. And again, the fact that the complainant stated that she was 100% sure that this was the offender. I would just like to point out, in addition to the weaknesses that I pointed out earlier, that competence in an identification is starting to be recognized as not something that can be correlated with accuracy. So I just wanted to make those points, and if Your Honor still have any other questions? I do. Sure. Was he arrested in Peoria? He was arrested. So I'm just asking you, why weren't you curious about those nearly $1,300 in added sheriff's fees that could not be related to extradition costs? The $1,300 in… I'm just putting that out to you because perhaps on another case you could look a little more closely at the fines and costs you would like to challenge. Okay. Thank you.  Thank you, Mr. Gannon. Thank you both. If we are in favor, we will take this matter under advisement. In fact, you would have written a decision within a short day. And now we'll take a short recess for panel discussion. All right. This court is adjourned.